Date signed October 11, 2006



*James F. Schneider*

**JAMES F. SCHNEIDER**
**U. S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| JUSTIN J. HAYES, | * | Case Nos. 05-23997-JS |
| Debtor | * | Chapter 7 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| JUSTIN J. HAYES, | * | |
| Plaintiff, | * | |
| | * | Adv. Pro. No. 05-1765-JS |
| v. | * | |
| EDUCATIONAL CREDIT MANAGEMENT CORP., | * | |
| Defendant | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### *MEMORANDUM OPINION  DISMISSING COMPLAINT*

On March 1, 2006, the instant complaint to discharge student loans came on for trial on the merits.  For the reasons stated, the complaint will be dismissed.

*FINDINGS OF FACT*

From December 27, 1999, through May 9, 2000, the debtor, Justin J. Hayes, was enrolled as a student in the Allstate Career School in a 480-hour course of instruction for certification to enable him to obtain licensure as a driver of tractor trailers and trucks.[1] On December 31, 1999, the debtor signed an application and promissory note for Federal Stafford Loan[2] [Defendant's Exhibit A] in the amount of $4,250,[3] to fund the cost of tuition. The loan was guaranteed by the Pennsylvania Higher Education Assistance Agency ("PHEAA") and American Education Services ("AES"). Beginning on December 18, 2000, the debtor was required to repay the loan by making monthly payments of $87.54. Between February 2001 and October 2002, he made only eight payments.[4]

The undisputed history of the debtor's postgraduate employment is as follows:

---

[1]The debtor testified at trial that he took the course with the intention of becoming a tractor trailer driver, but that he failed the driving test. Trial transcript, 7-8.

[2]A Stafford Loan is a program offered by the Federal Family Education Loan Programs in which lenders use their funds to make loans to enable a student to pay the costs of the student's attendance at post-secondary schools. 34 C.F.R. 682.100(a).

[3]A portion of the loan was subsidized in the amount of $1,750. Tr. at 28. The amount claimed by the defendant to be due and owing as of February 6, 2006, was $6,890. Tr. at 29; Defendant's Exhibit C.

[4]On direct examination at trial, the debtor testified that he made 10-12 payments, but admitted on cross examination that he made only eight payments. Tr. at 11 and 24.

| | |
|---|---|
| September 2000 - May 2001 | School bus driver for the Baltimore County Public Schools |
| June 2001 - July 2002 | Truck driver for Transforce, Inc. |
| July 2002 - December 2002 | Truck driver by Broadway Services |
| February 2003 - November 2003 | Stock clerk for Target |
| December 2003 - March 2004 | Truck driver for Summit Moving and Storage Co. |
| April 2004 - present | Warehouse manager for Pinnacle Granite &Marble, Inc. |

The debtor is 53 years of age, unmarried and has no dependents. His annual income in 2001 was $30,381, and he received $1,977 in income tax refunds. His annual income in 2002 was $34,192, and he received $649 in income tax refunds. In 2003, he had an income of at least $24,435. In 2004, his income increased to $42,273, and he owed Federal income taxes in the amount of $2,000.

On June 17, 2005, the debtor filed a Chapter 7 bankruptcy petition in this Court. He disclosed a monthly net income of $1,461 in Schedule I and monthly expenses of $1,440 in Schedule J,[5] thus affording him excess income in the amount of $41.75 per

---

[5]These expenditures consisted of $485 for rent, $60 for telephone, $250 for food, $50 for clothing, $80 for laundry and dry cleaning, $118 for medical and dental, $100 for transportation, $50 for recreation, clubs and entertainment, newspapers and magazines, $80 in charitable contributions and $167 for auto insurance.

month.   On July 13, 2005, he filed the instant adversary proceeding against PHEAA seeking to discharge his student loan debt.   By letter dated August 5, 2005 [Defendant's Exhibit B], AES/PHEAA assigned the loan to Educational Credit Management Corporation ("ECMC").   On September 21, 2005, the debtor substituted ECMC as a defendant.

After the debtor filed bankruptcy, he rejected the defendant's offer of four alternate repayment options for the Stafford Loan, with proposed monthly payments ranging in amount from $37.62 to $74.10.   At trial, the debtor testified that he cannot afford to pay even the lowest of the amounts proposed.   Tr. at 31.

The complaint sets forth two alternative grounds for discharging the loan, namely (1) that its repayment would cause the debtor undue hardship, and (2) that the Allstate Career School was not a *bona fide* educational institution, citing the fact that the school is a "for profit" enterprise, that it assigned the debt to a collection agency and that truck driving schools as a *genre* have been shown to be unscrupulous based upon numerous complaints made to the Federal Trade Commission.   Counsel for ECMC argued that because the Stafford Loan was issued through the Federal Family Education Loan

4

Program and was guaranteed by AES/PHEAA, it qualified as a student loan.  Section

523(a)(8) governs the dischargeabilty of student loan debts in bankruptcy.[6]

The debtor testified at trial that his rent had increased from $485 to $550 per

month, but that he no longer had the expense of $167 per month for auto insurance,

thereby increasing his excess monthly income to $143.75, a net gain of $102.

---

[6]Section 523(a)(8) provides, as follows:

### § 523. Exceptions to discharge.

(a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for–

(A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

(ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

11 U.S.C. § 523(a)(8) (2006).

### *CONCLUSIONS OF LAW*

### NONDISCHARGEABILITY OF STUDENT LOANS

". . .[W]hereas the Bankruptcy Code focuses on the impact financial problems have on individual debtors, Section 523(a)(8) concentrates on the impact individual debtors have on future educational debtors and institutional creditors, particularly unsecured creditors like TIFCU." *TI Federal Credit Union v. DelBonis*, 72 F.3d 921, 937 (1st Cir. 1995). "The legislative history of the 11 U.S.C. § 523(a)(8) teaches us that the exclusion of educational loans from the discharge provisions was designed to remedy an abuse by students who, immediately upon graduation, filed petition for bankruptcy and obtained a discharge of their educational loans. This was due to the fact that unlike commercial transactions where credit is extended based on the debtor's collateral, income, and credit rating, student loans are generally unsecured and based solely upon the belief that the student-debtor will have sufficient income to service the debt following graduation." *Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738, 740 (6th Cir.1992), *citing* H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 466-75 reprinted in 1978 U.S.C.C.A.N. 5787). *See also*, *O'Brien v. First Marblehead Education Resources, Inc. (In re O'Brien)*, 419 F.3d 104 (2d Cir. 2005).

6

**THE DEBTOR HAS FAILED TO PROVE UNDUE HARDSHIP**

A debtor seeking to discharge a government-guaranteed student loan must show that not discharging the debt would impose an undue hardship.  *Educational Credit Management Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 399 (4th Cir. 2005). In *Frushour,* the  Fourth Circuit adopted the test enunciated by the Second Circuit in *Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner)*, 831 F.2d 395, 396 (2d Cir.1987), whereby the debtor must show "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans."  433 F.3d at 398, *citing Brunner*, 831 F.2d at 396.  "Failure to meet any one of the three prongs of the *Brunner* test results in a determination that the loans are not dischargeable."  *Simms v. USA Funds ( In re Simms*), 328 B.R. 437, 440 (Bankr. D. Md. 2005).  In *Frushour*, the Fourth Circuit held the student loan to be nondischargeable based upon the failure of the debtor to satisfy the second and third prongs of the *Brunner* test.  433 F.3d at 400.

The debtor has the burden of proving undue hardship by a preponderance of the evidence.  *Frushour*, 433 B.R. at 400; *In re Blair*, 301 B.R. 181, 184 (D. Md. 2003),

*citing Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L. Ed.2d 755 (1991),

and *United States v. McGrath*, 143 B.R. 820, 825 (D.Md.1992), aff'd, 8 F.3d 821 (4th

Cir.1993) (Table).

To prove "undue hardship," one must demonstrate "suffering from truly severe,

and even uniquely difficult circumstances." *Craig v. Penn. Higher Education

Assistance Agency (In re Craig)*, 64 B.R. 854, 857 (Bankr. W.D. Pa.1986), *cited in

U.S. v. Davis*, 142 B.R. 293, 295 (S.D. Ind. 1992).

Based upon the evidence of the debtor's income and employment since his

graduation from truck driving school, this Court finds that he has failed to show by any

standard of proof that repaying the loan in question will cause him an undue hardship

and that he cannot maintain a minimal standard of living.  The debtor is gainfully

employed as a truck driver, albeit not a tractor trailer driver, one of the vocations for

which he received student aid, and he enjoys excess income after rather generous

deductions for non-essential expenditures. *See Frushour*, 433 F.3d at 401 ("nothing

in the Bankruptcy Code suggests that a debtor may choose to work only in the field in

which he was trained, obtain a low-paying job, and then claim that it would be an

undue hardship to repay his student loans," *citing U.S. Dep't of Educ. v. Gerhardt (In

the Matter of Gerhardt)*, 348 F.3d 89, 93 (5th Cir.2003)).

The evidence indicates that Hayes could appropriately reduce certain expenditures and make his student loan payments without falling below a minimal standard of living. *Cf. Levernier v. Educational Credit Management Corp. (In re Levernier)*, 307 B.R. 684, 689 (C.D. Cal. 2004), where, as in the instant case, a debtor with no dependents who was gainfully employed but whose finances were "tight" was held to have failed to prove any undue hardship in repaying her student loans.

While the fact that the debtor was offered repayment plans that required payments of as little as $37.62 per month may be relevant to a finding of a lack of good faith in failing to repay the loans, *Frushour*, 433 F.3d at 402, the failure of the debtor to satisfy the first prong of the *Brunner* test is sufficient to deny him relief. *In the Matter of Roberson,* 999 F.2d 1132, 1135 (7th Cir. 1993)(the first prong of *Brunner* is a threshold inquiry and only when the debtor has satisfied the first prong should the court go on to consider the remaining two prongs.) The debtor has failed to satisfy the second prong of *Brunner* because he has produced no evidence of the presence of factors beyond his control, such as debilitating physical or mental health, lack of mental capacity or intelligence, or an inability to work, that prevent him from maintaining employment now and in the future. *See In re Mallinckrodt*, 274 B.R. 560, 567-8 (S.D. Fla. 2002)(applying the *Brunner* test to an employed debtor with no dependents).

**THE DEBT IS A GOVERNMENT-GUARANTEED EDUCATIONAL LOAN**

9

The creditor has the burden of showing by a preponderance of the evidence that the subject loan qualifies as an educational loan for purposes of discharge under Section 523(a)(8). *Joint Apprenticeship Comm. of United Ass'n Local Union No. 307 v. Rezendes (In re Rezendes)*, 324 B.R. 689, 693-4 (N.D. Ind.2004). In the instant case, it is the creditor's burden to prove by a preponderance of the evidence, that the loan at issue was "made, insured or guaranteed by a governmental unit." *Sheer v. Education Credit Management Corp.*, 245 B.R. 236, 240 (D. Md. 1999), *aff'd, In re Sheer*, 229 F. 3d 1143 (4th Cir. 2000)(Table).

Educational loans are generally evidenced by a formal, express contract between the student and the educational institution, reflected, as in the instant case, by the issuance of a promissory note. *In re Chambers,* 348 F. 3d 650 (7th Cir. 2003); *Boston Univ. v. Mehta* (*In re Mehta*), 310 F.3d 308 (3rd Cir. 2002); *Cazenovia College v. Renshaw* (*In re Renshaw*), 222 F. 3d 82 (2d Cir. 2000).

"Congress included government guaranteed educational loans in the group of presumptively nondischargeable debts because it believed that many student borrowers were abusing the 'fresh start' policy by filing for bankruptcy and obtaining discharge of educational debt soon after graduation, before making any significant attempts at repayment." *Hiatt v. Indiana State Student Assistance Com'n*, 36 F.3d 21, 24 (7th Cir. 1994), *cert. denied*, 513 U.S. 1154, 115 S. Ct. 1109, 130 L. Ed.2d 1074 (1995), *citing*

10

*In re Nunn*, 788 F.2d 617, 619 (9th Cir.1986), and 3 *Collier on Bankruptcy* § 523.18, at 523-148 & n. 2 (15th ed. 1985) (*citing* H.R.Rep. No. 595, 95th Cong., 1st Sess. 133 (1979)).

"By enacting section 523(a)(8), Congress sought principally to protect government entities and nonprofit institutions of higher education – places which lend money or guarantee loans to individuals for educational purposes – from bankruptcy discharge. Because such loans are not based upon a borrower's proven credit-worthiness, and because they serve a purpose which Congress sought to encourage, section 523(a)(8) protects the lender when a borrower, who often would not qualify under traditional underwriting standards, files a chapter 7 bankruptcy." *Santa Fe Medical Services, Inc. v. Segal (In re Segal)*, 57 F.3d 342, 348 (3d Cir. 1995).

". . .[T]he text of the Bankruptcy Code, the Federal Family Education Loan Program ('FFELP'), and [the debtor]'s promissory notes support nondischargeability. In other words, it is the purpose, not the use, of the loan that controls. Treating FFELP guaranteed loans uniformly, regardless of actual use, is true to the text and will prevent recent graduates from reneging on manageable debts and will preserve the solvency of the student loan system." *Murphy v. Penn. Higher Education Assistance Agency (In re Murphy)*, 282 F.3d 868, 870 (5th Cir. 2002).

11

The loan at issue is a government-guaranteed educational loan funded through a Federal post-secondary educational loan program. Section 481 of the Higher Education Act of 1965 (20 U.S.C. 1088) includes "any college, university, vocational school, or other postsecondary educational institution" as educational institutions that are eligible to participate in such student aid programs. The debtor introduced no evidence to show that Allstate Career School was not eligible to participate in the program as a vocational school. Nothing in the statutes cited required that such schools be non-profit institutions in order for their students to qualify for student aid.

At trial, the debtor acknowledged that he signed a promissory note for the Stafford Loan to pay the cost of tuition. The fact that the loan was granted at his request and guaranteed by a Federal agency for educational purposes constitutes *prima facie* proof that it was a qualified educational loan and that Allstate Career School was a qualified educational institution. Because the debtor presented no contrary evidence, the complaint must be dismissed. It is not the province of the bankruptcy court to "second-guess" the propriety of the agency in granting the loan.[7]

---

[7]In relevant part, Section 221(d)(1) of the Internal Revenue Code of 1986 defines a "qualified educational loan" to mean "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred, which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, and which are attributable to

ORDER ACCORDINGLY.


**END OF OPINION**

---

education furnished during a period during which the recipient was an eligible student."
26 U.S.C. § 221(d)(1),

Section 25A(f)(2) of the Internal Revenue Code defines an "eligible educational institution" to mean "an institution which is described in section 481 of the Higher Education Act of 1965 (20 U.S.C. 1088), as in effect on the date of the enactment of this section, and which is eligible to participate in a program under title IV of such Act."  26 U.S.C. § 25A(f)(2).

13

cc:   Rand L. Gelber, Esquire
One Church Street
Rockville Maryland  20850
Attorney for the Defendant

Educational Credit Management Corporation
c/o Rand L. Gelber, Esquire
One Church Street, Suite 802
Rockville, Maryland  20850

John E. Beverungen, Esquire
Baltimore County Office of Law
Old Courthouse
400 Washington Avenue, 2nd Floor
Towson, Maryland  21204
Attorney for the Plaintiff

Mr. Justin J. Hayes
4026 Hilton Road, Apartment 2
Baltimore, Maryland  21215
Debtor

Joseph J. Bellinger, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
300 East Lombard Street, 18th Floor
Baltimore, Maryland  21202- 3268
Chapter 7 Trustee